**12 CV 6908**

PREET BHARARA
United States Attorney
By: MARA E. TRAGER
ELLEN LONDON
Assistant United States Attorneys
86 Chambers Street, 3rd Fl.
New York, NY 10007
Tel.: (212) 637-2799/2737
Fax: (212) 637-2702
Email: mara.trager@usdoj.gov
ellen.london@usdoj.gov

RECEIVED
SEP 1 2 2012
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

    v.

CROSSBORO CONTRACTING CO., INC. and
MICHAEL PALETTA,

        Defendants.
-----------------------------------------------------------X

12 Civ. _____

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff United States of America (the "United States" or the "Government"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, alleges as follows:

## INTRODUCTION

1. The United States files this civil complaint to recover damages and penalties from Defendants Crossboro Contracting Co., Inc. and Michael Paletta ("Crossboro" or "Defendants") under the False Claims Act and common law arising from false representations, caused by Defendants, that work on federally-funded construction projects had been performed by a disadvantaged business enterprise ("DBE"), when in fact Defendants themselves performed the

work. Defendants used the DBE as a pass-through to obtain contracts for road-striping work on sites including Grand Concourse, Brooklyn Bridge, 145th Street, Manhattan Bridge, Willis Avenue Bridge, LaGuardia Airport, and JFK International Airport. As a result of the fraud, Defendants fraudulently received tens of thousands of dollars of federal funds.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 and 1345, over the remaining claims pursuant to 28 U.S.C. § 1345, and over all claims pursuant to the Court's general equitable jurisdiction.

3. Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1391(c), because Defendants conduct business within this District.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant Crossboro is a construction company with offices at 3640 Provost Avenue, Bronx, New York 10466.

6. Defendant Michael Paletta is and was, at all relevant times, the President of Crossboro.

## REGULATORY BACKGROUND

7. The United States Department of Transportation ("DOT") regulations entitled "Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs" are intended to provide opportunities for businesses owned by socially and economically disadvantaged individuals, such as minorities and/or women, possessing the

required skills to perform work on construction projects funded, at least in part, by the federal government. The regulations are codified at 49 C.F.R., Part 26 (the "DBE Regulations"). They are designed to "ensure nondiscrimination in the award and administration of DOT-assisted contracts in the Department's highway, transit, and airport financial assistance programs."

8. The DBE Regulations require that every contract that a DOT funding recipient signs with a contractor include an assurance by the contractor that "[t]he contractor . . . shall carry out applicable requirements of [the DBE Regulations] in the award and administration of DOT-assisted contracts," and that "[f]ailure to carry out these requirements is a material breach of this contract, which may result in the termination of this contract or such other remedy as the recipient deems appropriate." 49 C.F.R. § 26.13(b).

9. The DBE Regulations provide that payments made to a DBE contractor may be counted toward DBE goals "only if the DBE is performing a commercially useful function on that contract." 49 C.F.R. § 26.55(c). A "commercially useful function" is performed when a DBE is "responsible for the execution of the work of the contract and is carrying out its responsibilities by actually preforming, managing, and supervising the work involved." *Id.* To perform a "commercially useful function," the regulations require that the DBE "be responsible, with respect to materials and supplies used on the contract, for negotiating price, determining quality and quantity, ordering the material and installing (where applicable) and paying for the material itself." *Id.*

10. The DBE Regulations specifically prohibit "pass-through" arrangements. Thus, a DBE does not perform a commercially useful function "if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain

3

the appearance of DBE participation." *Id.* If a DBE does not perform or exercise responsibility for at least 30 percent of the total cost of its contract with its own work force, it is presumed that the DBE is not performing a commercially useful function. *Id.*

11. The DBE Regulations apply equally to projects funded through the Federal Transit Administration ("FTA"), the Federal Highway Administration ("FHWA"), and the Federal Aviation Administration ("FAA"), all of which are agencies of the DOT. *See* 49 C.F.R. § 26.3(a).

## THE FRAUDULENT SCHEME

### A.   MS Construction Co.

12. At all times relevant to this complaint, MS Construction Co. ("MS") operated as a shell company whose sole employee was its president and owner.

13. MS and Crossboro had an arrangement pursuant to which they shared office space, a bank account, management, equipment, and staff.

14. In addition, Crossboro staff used a stamp of MS's president's signature to write checks on MS's account to pay Crossboro expenses when Crossboro was working under MS's name.

15. Crossboro used MS's name and DBE status to obtain road-striping subcontracts on a number of public works projects, including the federally funded projects listed below.

16. MS never performed work on any DBE line-painting subcontract. The work was always done by Crossboro, in MS's name.

17. MS's president received 5% of every requisition payment from Crossboro in exchange for the use of MS's DBE status.

B. The Federally Funded Contracts

18. Several of the projects in which Crossoboro was involved were administered by the New York City Department of Transportation ("NYCDOT"), in part with funds from the United States DOT. These projects were associated with the following sites: (1) Grand Concourse, (2) Brooklyn Bridge, (3) 145th Street, (4) Manhattan Bridge, and (5) Willis Avenue Bridge.

19. The Grand Concourse Project is contract number HWXP136R and Federal Aid Project No. Q92.0X75.893. It encompassed the renovation of the roadways in the Grand Concourse/161st Street area of the Bronx. The contract was awarded to Slattery Skanska, Inc. ("Slattery"). On or about January 25, 2010, Slattery submitted a "DBE Utilization Worksheet" to the NYCDOT indicating that Slattery had subcontracted with MS to perform road-striping work on the project at a value of $36,056.00. In order to collect payment, MS submitted weekly payroll reports to Slattery. In reality, Defendants had an arrangement with MS that Defendants would perform the work and pay MS a commission. In those reports, MS certified that all the work for which it requested payment had been performed by its own employees. Similarly, Slattery and MS submitted regular "Contract Report[s] of Contract Payment" to the NYCDOT. MS certified in those reports that all the work for which it was granted payment had been performed by its own employees. However, in reality, Crossboro employees performed the work.

20. The Brooklyn Bridge project is contract number BRC-270C/P and Federal Aid Project No. L1C0/L050-X751-063. It encompassed the rehabilitation of the approach spans and ramps, and painting of the entire Brooklyn Bridge. The contract was awarded to Skanska Koch, Inc. ("Skanska"), a general contractor, on or about December 14, 2009. On or about January 22,

5

2010, Skanska submitted a "DBE Utilization Worksheet" to the NYCDOT indicating that Skanska had subcontracted with MS to perform road-striping work on the project at a value of $411,800.00. In order to collect payment, MS submitted weekly payroll reports to Skanska. In those reports, MS certified that all the work for which it requested payment had been performed by its own employees. However, in accordance with the arrangement between Crossboro and MS, Crossboro employees performed the work.

21.   The 145th Street Project is contract number HBX1029 and Federal Aid Project No. Q23.X757.059. It involved the reconstruction of the 145th Street Bridge. The contract was awarded to Kiewit Constructors Inc./Tully Construction Co Inc., JV ("Kiewit/Tully"), a joint venture. On or about March 5, 2007, Kiewit/Tully submitted a "DBE Utilization Worksheet" to the NYCDOT that indicated Kiewit/Tully had subcontracted with MS to perform road-striping work at a value of $17,192.00. MS ultimately received $14,938.00 for that work. During the course of the project Kiewit/Tully and MS submitted regular payment reports to the NYCDOT. In those reports, MS certified that all the work for which it was granted payment had been performed by its own employees. However, in accordance with the arrangement between Crossboro and MS, Crossboro employees performed the work.

22.   The Manhattan Bridge Project is contract number BRC-156R and Federal Aid Project No. LICO.L230-X850-913. It involves the reconstruction of the Manhattan Bridge, including cable replacement and restoration of the roadway. The contract was awarded to Skanska Koch, Inc. on or about October 16, 2009. On or about February 21, 2010, Skanska submitted a "DBE Schedule of Utilization" to the NYCDOT indicating that it had subcontracted with MS to perform work on the project at a value of $8,875.00. Payment for the subcontracted

labor was credited to MS. However, in accordance with the arrangement between Crossboro and MS, Crossboro employees performed the work.

23. The Willis Avenue Bridge Project is contract number BRC-R076 and Federal Aid Project No. L1C0/L050-X757-003. It involves the replacement of the Willis Avenue Bridge. The contract for the Willis Avenue Bridge Project was awarded to the general contractor Kiewit Constructors Inc./Weeks Marine, Inc., a joint venture ("Kiewit/Weeks"). The "DBE Utilization Worksheet" submitted by Kiewet/Weeks to the NYCDOT on or about April 12, 2007 indicates Kiewit/Weeks subcontracted with MS to perform road-striping work at a value of $108,990.00. This amount was later amended, and MS collected $140,377.00 for work done on the project. In order to collect payment, MS submitted weekly payroll reports to Kiewit/Weeks. In those reports, MS certified that all the work for which it requested payment had been performed by its own employees. Kiewit/Weeks and MS also submitted regular payment reports to the NYCDOT. MS certified in those reports that all the work for which it was granted payment had been performed by its own employees. However, in accordance with the arrangement between Crossboro and MS, Crossboro employees performed the work.

24. Three of the other projects in which Crossboro was involved were administered by the Port Authority of New York and New Jersey ("PANYNJ"), in part with funds from DOT. These projects are as follows: (1) LGA 689, (2) JFK 164.011, and (3) JFK 918.

25. PANYNJ Contract LGA 689 encompassed the refurbishment of taxiways and service roads at LaGuardia Airport. The contract was granted to Grace Industries, LLC. Records from PANJNY's engineering contract management database indicate that MS was paid to perform $43,541.00 worth of road-striping work for the project. However, in accordance with

the arrangement between Crossboro and MS, Crossboro employees performed the work.

26. PANYNJ Contract JFK 164.011 involved refurbishment of taxiways at JFK International Airport. The contract was granted to Grace Industries, LLC. Records from PANJNY's engineering contract management database indicate that MS was paid to perform $33,811.00 worth of road-striping work for the project. However, in accordance with the arrangement between Crossboro and MS, Crossboro employees performed the work.

27. PANYNJ Contract JFK 918 involved rehabilitation of a taxiway at JFK International Airport. The contract was granted to Grace Industries, LLC. Records from PANJNY's engineering contract management database indicate that MS was paid to perform $16,977.00 worth of road-striping work for the project. However, in accordance with the arrangement between Crossboro and MS, Crossboro employees performed the work.

### FIRST CLAIM

**Violations of the False Claims Act: Presentation of False Claims**

**(31 U.S.C. § 3729(a)(1) (2006))**

30. The United States incorporates by reference paragraphs 1-27 as if fully set forth in this paragraph.

31. The United States seeks relief against Defendants under Section 3729(a)(1) (2006) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

32. As set forth above, in connection with the foregoing schemes, Defendants knowingly, or with reckless disregard for the truth, presented and/or caused to be presented false or fraudulent claims for payment to NYCDOT and PANYNJ, recipients of federal funds, and such funds were paid to Defendants in reliance on the fraudulent claims.

33.     By reason of these false claims, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## SECOND CLAIM

### Violations of the False Claims Act: Making or Using a False Record or Statement
### (31 U.S.C. § 3729(a)(1)(B) (2006))

34.     The United States incorporates by reference paragraphs 1-27 as if fully set forth in this paragraph.

35.     The United States seeks relief against Defendants under Section 3729(a)(1)(B) (2006) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

36.     As set forth above, in connection with the foregoing schemes, Defendants knowingly, or in reckless disregard for the truth, made, used, and caused to made and used, false records and statements material to a false and fraudulent claim that was made to NYCDOT and PANYNJ, recipient of federal funds, and such funds were spent or used by NYCDOT and PANYNJ on the Government's behalf and to advance a Government interest.

37.     By reason of these false claims, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## THIRD CLAIM

### Unjust Enrichment

42.     The United States incorporates by reference paragraphs 1-27 as if fully set forth in this paragraph.

9

43. By reason of the payments to Defendants, Defendants were unjustly enriched. The circumstances of Defendants' receipt of these payments are such that, in equity and good conscience, Defendants should not retain these payments, the amount of which is to be determined at trial.

## FOURTH CLAIM

### Common Law Fraud

44. The United States incorporates by reference paragraphs 1-27 as if fully set forth in this paragraph.

45. Defendants made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth, in connection with the claims for payment submitted by, or on behalf of, Defendants to the United States.

46. Defendants intended that the United States rely upon the accuracy of the false representations referenced above.

47. The United States made substantial payments of money in justifiable reliance upon Defendants' false representations.

48. Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

## FIFTH CLAIM

### Payment Under Mistake of Fact

49. The United States incorporates by reference paragraphs 1-27 as if fully set forth in this paragraph.

50. The United States seeks relief against Defendants to recover monies paid under mistake of fact.

51. The Government disbursed funds based on statements submitted by Defendants to NYCDOT and PANYNJ under the erroneous belief that Defendants' statements that they were complying with DBE requirements were true.

52. Because of these payments and/or guarantees by mistake, Defendants have received monies to which they are not entitled.

53. By reason of the foregoing, the United States was damaged in a substantial amount to be determined at trial.

WHEREFORE, plaintiff, the United States, requests that judgment be entered in its favor and against Defendants as follows:

(a) On the First, Second and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented;

(b) On the First and Second Claims for Relief, an award of costs pursuant to 31 U.S.C. § 3729(a)(3);

(c) On the Third, Fourth, and Fifth Claims for Relief, in an amount to be determined at trial, together with costs and interest; and

(d) awarding such further relief as is proper.

Dated: New York, New York
September 12, 2012

By:

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Plaintiff
United States of America

*/s/ Ellen London*

MARA E. TRAGER
ELLEN LONDON
Assistant United States Attorneys
86 Chambers Street
New York, New York  10007
Telephone:  (212) 637-2799/2737
Facsimile:  (212) 637-2702
mara.trager@usdoj.gov
ellen.london@usdoj.gov